J-A22039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF:  A.J.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.C., FATHER | : | No. 595 MDA 2020 |

Appeal from the Decree Entered March 17, 2020
In the Court of Common Pleas of Lancaster County
Orphans' Court at No.:  2019-02486

BEFORE:  SHOGAN, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 14, 2020**

D.C. ("Father") appeals from the decree entered March 17, 2020, which terminated involuntarily his parental rights to his daughter, A.J.C. ("Child").[1] After careful review, we affirm.

The record reveals that the Lancaster County Children and Youth Social Service Agency ("CYSSA") became involved with Child at the time of her birth in October 2017, after it received a report indicating that Father overdosed in the hospital.  N.T., 2/4/20, at 58.  CYSSA implemented a safety plan, which it lifted in December 2017 due to Mother's compliance with services.  *Id.* at 59.

---

[1] The orphans' court entered a separate decree terminating involuntarily the parental rights of Child's mother, J.L.F. ("Mother").  Mother appealed the termination of her rights at Superior Court docket number 608 MDA 2020.  We address her appeal in a separate memorandum.

While CYSSA also referred Father for services, he was "in and out" and did not cooperate with CYSSA. ***Id.***

Subsequently, on August 30, 2018, CYSSA received a report indicating that Mother overdosed and that Father "left [Child] at a crack house."[2] ***Id.*** at 57-58. CYSSA obtained custody of Child that same day. ***Id.*** at 57. The juvenile court adjudicated Child dependent on September 19, 2018. ***Id.*** at 80.

Following the adjudication of dependency, Father made little progress toward achieving reunification with Child. Father had been incarcerated for a probation violation on September 4, 2018, and was released on October 12, 2018. ***Id.*** at 79-80. However, he was charged with endangering the welfare

---

[2] The CYSSA caseworker testified that Mother did not overdose but suffered a seizure. N.T., 2/4/20, at 72. Further, CYSSA presented the expert testimony of psychologist, Jonathan Gransee, Psy.D., who performed parental capacity assessments of Mother and Father. Dr. Gransee's report regarding Father also states that Mother suffered a seizure, based on a conversation with the CYSSA caseworker. Petitioner's Exhibit 4 at 8. Despite this evidence, the orphans' court indicates in its opinion that Mother's claim she suffered a seizure has "not been credibly substantiated." Orphans' Court Opinion, 3/17/20, at 1.

Notably, Dr. Gransee's report casts doubt on the allegation that Father left Child at a "crack house" as well. The report states:

> [T]here were allegations that [Father] had left his daughter at a "crack house;" he stated this was a friend['s] house, and not a crack house. (His caseworker stated "it was never amended", but she believes that he is correct, but the parents never contested the statements in the report, so it has never been amended. She stated that it was still the case that [Father] did not make a wise choice as to whom he left the child with).

Petitioner's Exhibit 4 at 2.

of children later that year, due to his substance abuse and resulting neglect of Child, and pled guilty. Petitioner's Exhibit 6 (documents related to Father's criminal conviction). Father was incarcerated in December 2018 and was not released until December 2019. N.T., 2/4/20, at 82. Meanwhile, on October 11, 2019, CYSSA filed a petition to terminate Father's parental rights to Child involuntarily.

The orphans' court conducted a hearing on CYSSA's termination petition on February 4, 2020. Following the hearing, on March 17, 2020, the court entered a decree terminating Father's parental rights. Father timely filed a notice of appeal on April 13, 2020, along with a concise statement of errors complained of on appeal.

Father now raises the following claim for our review:

> 1. Whether the [orphans' c]ourt correctly found that [CYSSA] had met its burden of establishing with clear and convincing evidence that Father, who was incarcerated for a majority of the relevant time period, failed or refused to perform his parental duties and would not be in a position to do so in the reasonable future[?]

Father's Brief at 7.

We review Father's claim in accordance with the following standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial

- 3 -

court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs the involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis:

> . . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights to Child pursuant to Section 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision pursuant to Section 2511(a)(2) and (b), which provides as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

    (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first consider whether the orphans' court abused its discretion by terminating Father's parental rights to Child pursuant to Section 2511(a)(2).

Our analysis is as follows:

    . . . . In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

- 5 -

***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted). Significantly, "a parent's incarceration is relevant to the [S]ection [2511](a)(2) analysis and, depending on the circumstances of the case, it may be dispositive of a parent's ability to provide the 'essential parental care, control or subsistence' that the section contemplates." ***In re A.D.***, 93 A.3d 888, 897 (Pa. Super. 2014) (citation omitted).

In his brief, Father contends that he was unable to comply with CYSSA's reunification requirements because of his incarceration. Father's Brief at 12. He maintains that the facilities where he was incarcerated did not offer the services necessary for him to comply, but that he made a sincere effort to be involved in Child's life nonetheless. ***Id.*** at 12, 16-18. Father also argues that the orphans' court failed to consider the testimony of CYSSA's expert, Dr. Gransee, who testified that Father was "doing what was necessary to do to become a capable parent once he was released from prison." ***Id.*** at 12, 19. He emphasizes that he entered a rehabilitation facility after his release. ***Id.*** at 19.

The orphans' court explained its decision to terminate Father's parental rights to Child pursuant to Section 2511(a)(2) as follows:

Here, Mother['s] and Father's extended period[s] of recent incarceration clearly rises to the level of . . . continued incapacity. As discussed previously, the parents have failed to provide any parental care to the Child except during the one visit they were each able to have with the Child in 2018. While Mother and Father are hopeful that they will regain the ability to parent their Child, no credible evidence has been presented sufficient to demonstrate that Mother or Father will be able to maintain a life of sobriety and financial stability that is necessary for the upbringing of a child. Therefore, the court is satisfied that [CYSSA] has proven, by clear and convincing evidence, that termination of Mother's and Father's parental rights is warranted pursuant to Section 2511(a)(2).

Orphans' Court Opinion, 3/17/20, at 13.

Our review of the record supports the decision of the orphans' court. As summarized above, CYSSA became involved with Child at the time of her birth in October 2017, after it received a report indicating that Father overdosed in the hospital. N.T., 2/4/20, at 58. Child entered foster care on August 30, 2018, after CYSSA received a second report indicating that Mother overdosed and that Father "left [Child] at a crack house."[3] *Id.* at 57-58. Father was incarcerated for a probation violation[4] on September 4, 2018, and released on October 12, 2018. *Id.* at 79-80, 105. However, he was arrested in December 2018 and charged with endangering Child's welfare, to which he pled guilty. Petitioner's Exhibit 6. The information containing Father's charge states that

---

[3] As explained in footnote two, the record indicates that the allegations in this report were inaccurate.

[4] Father explained, "It stems from a drug charge I caught back in 2014. . . . it was a little difficult to make it from Lancaster to Delaware County for my appointment and they had issued a bench warrant for failure to report." N.T., 2/4/20, at 58.

he endangered Child between March and August 2018, "by frequently being under the influence of drugs or alcohol, to a degree that [he] was unable to care for [Child's] basic needs including supervision, feeding and hygiene." *Id.* He was not released from incarceration until December 2019. N.T., 2/4/20, at 82.

Throughout Child's placement in foster care, Father did little to comply with CYSSA's reunification requirements. Most critically, he failed to address his history of substance abuse.[5] CYSSA recommended that Father participate in an evaluation to determine the level of substance abuse treatment that he would need, but he did not complete the evaluation prior to his incarceration

---

[5] Father also struggled to maintain contact with Child. He attended a visit on October 19, 2018, but then failed to attend his only other scheduled visit on November 2, 2018. N.T., 2/4/20, at 70. The CYSSA caseworker testified that Father requested visits with Child after his incarceration in December 2018, but that he did not receive visits because of "conditions on the bail bonds for incarceration." *Id.* at 82-83. In its opinion, the orphans' court states that Father was unable to visit with Child and that it suspended his visits for the duration of his incarceration in July 2019. Orphans' Court Opinion, 3/17/20, at 3. The court also echoes the caseworker's explanation that Father could not have visits "because of controlling bail conditions, which prevented him from having unsupervised contact with minors." *Id.* at 5.

The record contains a photocopy of Father's sentencing conditions order, dated June 18, 2019, which directs that he have "no unsupervised visits w[ith] children." Petitioner's Exhibit 6. Notably, the order does not prohibit Father from having supervised visits with children, and it is unclear why he could not have had supervised visits with Child during his incarceration, as he spent the majority of his incarceration locally in Lancaster County. *See* N.T., 2/4/20, at 82 (the caseworker explaining that Father "had served at Lancaster County Prison until August 2nd of 2019 and then was transferred to Delaware County [J]ail").

in December 2018.  *Id.* at 69.  He participated in Narcotics Anonymous and/or Alcoholics Anonymous meetings during his incarceration, but apparently did nothing else.[6]  *Id.* at 83-85, 109-110.

By the time of the hearing on February 4, 2020, Father remained in no position to provide appropriate parental care for Child.  Father testified that he was residing at an inpatient substance abuse rehabilitation facility.  *Id.* at 112.  He reported that he would remain at the facility until at least the middle of February, and possibly longer.  *Id.* at 113.  Father explained that he would be participating in interviews with halfway houses, and that, while he hoped to reside in a recovery house eventually, "I believe the halfway house is a more structured environment.  And I think that would be a better . . . stepping stone before going out there and jumping in a recovery house."  *Id.*  Thus, Father's own testimony confirmed that he was incapable of parenting Child, and that he could not or would not remedy that incapacity in the foreseeable future.

As a final matter, we reject Father's claim that the orphans' court failed to consider the testimony of CYSSA's expert witness, Dr. Gransee.  The court acknowledged Dr. Gransee's testimony in its opinion.  *See* Orphans' Court Opinion, 3/17/20, at 4.  In addition, contrary to Father's characterization, Dr.

---

[6] While Father testified, and now argues on appeal, that he did not have access to the services necessary to comply with CYSSA's reunification requirements while incarcerated, reasonable reunification services are not a prerequisite to the involuntary termination of parental rights pursuant to Section 2511(a)(2). *See In re D.C.D.*, 105 A.3d 662 (Pa. 2014).

Gransee's testimony was critical of Father, and did not indicate that the court should deny CYSSA's petition. Dr. Gransee opined that Father lacked parental capacity at the time he conducted his assessment in April 2019. N.T., 2/4/20, at 21, 24. While Dr. Gransee agreed that Father was now "saying all of the right things" and taking appropriate steps to change his behavior, he noted that "[e]verybody says that in jail[,]" and expressed skepticism that Father's parental capacity would actually improve in the near future. *Id.* at 25-28, 53. Dr. Gransee explained that he could reevaluate Father after he had received six months of appropriate treatment. *Id.* at 27-28. Accordingly, we discern no abuse of discretion by the court in terminating Father's parental rights to Child pursuant to Section 2511(a)(2), and we affirm that portion of the court's March 17, 2020 decree.

We next consider whether the orphans' court abused its discretion by terminating Father's parental rights to Child pursuant to Section 2511(b). We apply the following analysis.

> . . . . Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the [S]ection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted).

Father waived any challenge to Section 2511(b) by failing to include and develop it in the argument section of his brief. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017) ("[T]his Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority.").

Even if Father had preserved a claim regarding Section 2511(b) for our review, we would conclude that it is meritless. The record reveals that Father has had no contact with Child since a visit on October 19, 2018, when she was approximately one year old. N.T., 2/4/20, at 70. In contrast, Child has spent her entire placement in foster care residing in the same foster home, which is potentially a permanent home. *Id.* at 70-71. By the time of the hearing on February 4, 2020, Child had spent over half of her life in the foster home and referred to her foster parents as "mommy" and "daddy." *Id.* at 71, 87. It is clear that Child shares a meaningful bond with her foster parents and not with

Father. *See In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008) (observing that the relationship between K.Z.S. and his mother must have been "fairly attenuated," given that K.Z.S. had been in foster care for most of his young life, and had only limited contact with his mother during that time); *see also Matter of Adoption of M.A.B.*, 166 A.3d 434, 449 (Pa. Super. 2017) ("[A] child develops a meaningful bond with a caretaker when the caretaker provides stability, safety, and security regularly and consistently to the child over an extended period of time."). Thus, termination of Father's parental rights would best serve Child's needs and welfare pursuant to Section 2511(b).

Based on the foregoing analysis, we conclude that the orphans' court did not abuse its discretion by terminating Father's parental rights to Child involuntarily, and we affirm the court's March 17, 2020, termination decree.

Decree affirmed.

Judge Murray joins the memorandum.

Judge Shogan concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2020

- 12 -